# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL S. GRANT,<br><br>   Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>   Defendants. | Case No. 1:17-cv-00682-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS FOR FAILURE/INABILITY TO STATE A CLAIM**<br><br>**(Doc. 20)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## **FINDINGS**

### A. **Background**

Plaintiff alleges he is being transferred to various CDCR facilities in retaliation for "snitching" on an officer who brought drugs into SCC. Plaintiff's Second Amended Complaint (Doc. 20) is before the Court for screening under 28 U.S.C. § 1915A(a). However, despite the Court providing the applicable standards twice before, Plaintiff continues to fail to state a cognizable claim, such that this action should be **DISMISSED**.

### B. **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three bases, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). A complaint will be dismissed if it lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

**C.** **Summary of the Second Amended Complaint**

Plaintiff complains of acts that occurred in early 2016. Plaintiff names as defendants: John Does 1-7; Dr. Steven Smith, Lieutenants T. McCarthy and L. Bird; Correctional Officers Wright, Delgado, Heisol, T. Osten, Martinez, and Hall; Sergeants Mason and Burke; Psychiatrist Dr. M. Maddox; and Psychologists Laurina Yu and David Hamlin.

Plaintiff alleges that, in February of 2016, while he was housed in the ASU at SCC, Does 1 and 2 (correctional officers on first watch) lured him into waist-shackles and out of his cell. (Doc. 20, p. 5.) They took Plaintiff to a hallway where multiple inmates shoved Plaintiff around and threatened him. (*Id.*) When Plaintiff asked why they were doing this to him, Doe 1 told him

it was because Plaintiff snitched on an officer who brought in drugs. (*Id*., pp. 5-6.) Plaintiff was then taken in a van to the main medical building where Does 1 and 2 arranged for the same group of inmates to again threaten and "assault" Plaintiff. (*Id*., p. 6.) Doe 4 (medical staff/RN) and Dr. Smith prepared false medical accusations that Plaintiff had smoked "spice" (a synthetic marijuana) and had Plaintiff transported to Sonora Regional Hospital. (*Id*.) Plaintiff never told Does 1 and 2 that he had pain or felt ill for them to take Plaintiff out of his cell and Plaintiff never admitted to Doe 4 or to Dr. Smith that he had smoked spice. (*Id.*, p. 6.) Plaintiff alleges the latter fact is confirmed by the fact that he was never disciplined for smoking spice. (*Id.*)

Plaintiff was transported back to SCC on February 19, 2016. (*Id*., p. 7.) That evening, Wright, Delgado, and Heisol came into his cell and Heisol injected Plaintiff with methamphetamines while he was restrained by Wright and Delgado. (*Id*.) Shortly thereafter Plaintiff complained of chest pains and was escorted out of his cell in waist-shackles by Osten, Delgado, and Doe 5 (medical staff/nurse) to the ASU medical room. (*Id.*, pp. 7-8.) In the medical room, Doe 5 and Valera examined Plaintiff for his complaints of chest pain. (*Id.*, p. 8.) Plaintiff asked them if he could be examined in private, but before Valera could respond, Wright interjected and stated that he thought Plaintiff was faking the chest pain. (*Id.*) Plaintiff then asked Valera to speak to a lieutenant, "which led to 'no' availability." (*Id.*) Thereafter, Wright and Delgado displayed "a hostile attitude directly at the Plaintiff." (*Id.*) Subsequently, Wright and Delgado "forcefully shoved and pushed Plaintiff out of the medical room. (*Id.*) Plaintiff did not resist while Delgado squeezed Plaintiff's neck, and Wright forced his knee in Plaintiff's back while Bartholomew held Plaintiff's legs. (*Id.*) Plaintiff was then dragged into a holding cell where he was left "for several hours, being delayed on his serous medical issue of chest pains." (*Id.*, p. 9.) Mason and Martinez "stood by and knew the conduct of force Defendants Wright, Delgado, Osten, and Barthlomew utilized on Plaintiff was not in good faith, but applied toward Plaintiff to cause harm." (*Id.*) Plaintiff alleges that he suffered multiple scrapes on his knees, legs, and face from the use of force by these Defendants. (*Id.*) Plaintiff was thereafter taken back to Sonora Regional Hospital for his chest pains. (*Id*., p. 9.) McCarthy knew of his subordinates' wrongful acts via reviewing multiple incident reports but failed to take and corrective action.

(*Id.*)

Plaintiff was released back to SCC on February 21, 2016. (*Id.*, p. 9.) The next day, February 22, 2016, Doe 6 called Dr. Maddox to examine Plaintiff, trying to get Dr. Maddox to place Plaintiff in the mental health/suicidal program at PBSP to silence Plaintiff from revealing everything that had happened to him. (*Id.*) Dr. Maddox intentionally, falsely diagnosed Plaintiff and put him in the mental health program after Plaintiff told of everything that had happened to him. (*Id.*, p. 10.)

On February 23, 2016, Bird acted in concert with other defendants when Plaintiff told Bird the events he had suffered and refused to be transferred to BPSP mental health program. (*Id.*) Bird knew of the treatment Plaintiff had endured and "was the overseer and failed to correct or investigate the illegal conduct by his subordinates." (*Id.*) Plaintiff was transferred to the PBSP mental health unit that same day. (*Id.*)

At PBSP, Plaintiff alleges Hall, Burke and Doe 7 took turns denying Plaintiff showers and hardly gave Plaintiff enough toilet paper and would delay giving Plaintiff more when he ran out. (*Id.*, pp. 10-11.) Plaintiff alleges that Dr. Yu acted in concert with the Defendants from SCC with an objective to isolate Plaintiff and continue his harsh treatment. (*Id.*, p. 11.) Plaintiff told Dr. Yu of the events alleged herein, but she ignored them and did not report them. (*Id.*)

Plaintiff was transferred back to SCC on March 3, 2016. (*Id.*, p. 11.) Plaintiff had a debate/argument with Dr. Maddox about Dr. Maddox manipulating Plaintiff into the mental health program. (*Id.*) The next day, Dr. Hamlin evaluated Plaintiff as a second opinion at Dr. Maddox's request. (*Id.*) To quiet Plaintiff, Dr. Maddox and Dr. Hamlin sent Plaintiff to the mental health program at FSP, which Plaintiff alleges was less than 24-hours after five psychiatrists at PBSP had cleared Plaintiff to return to SCC. (*Id.*, pp. 11-12.) This subjected Plaintiff to harsh isolation and "some sort of disciplinary purpose for Plaintiff complaints." (*Id.*, p. 12.)

Plaintiff alleges the following claims under the Eighth Amendment: (1) deliberate indifference to Plaintiff's safety against John Does 1, 2, 4, 5, 6, Dr. Smith, Wright, Delgado, Hiesol, Mason, Martinez, Valera, McCarthy, and Bird (Doc. 20, pp. 12-13); (2) deliberate

indifference to Plaintiff's serious medical needs against Wright, Delgado, Hiesol, T. Osten, John Doe 5, Valera, Bartholomew, Mason, Martinez, Dr. Maddox, Dr. Hamlin, and Dr. Yu, (*id.*, p. 14); (3) deliberate indifference to Plaintiff's conditions of confinement against Hall, Burke, and John Doe 7 (*id.*); and (4) excessive force against Osten, Wright, Delgado, and Bartholomew (*id.*, p. 13). As discussed below, despite twice receiving the applicable standards (*see* Docs. 12, 17), none of Plaintiff's claims are cognizable. It thus appears that Plaintiff is unable to cure the deficiencies of his pleading and this action should be **DISMISSED**.

### D. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal,* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements

of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief, *Johnson v. City of Shelby*, __ U.S. __, __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

## 2. Linkage and Causation

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Though Plaintiff names "John Doe 3" as a defendant, this defendant is not linked to any of Plaintiff's factual allegations. Plaintiff's allegations must place each defendant on notice of his claims to be able to prepare a defense, *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996), and must demonstrate that each individual defendant personally participated in the deprivation of his rights, *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short

of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe*, 627 F.3d at 342.

### E. Claims for Relief

#### 1. Eighth Amendment

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

##### a. Safety

Plaintiff indicates that he desires to pursue a claim for deliberate indifference to his safety against John Does 1, 2, 4, 5, 6, Dr. Smith, Wright, Delgado, Hiesol, Mason, Martinez, Valera, McCarthy, and Bird. (Doc. 20, pp. 12-13.) Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health. . ." *Farmer*, at 843 (citing *Helling*, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id.*, at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.*, at 836-37. This involves both objective and subjective components.

First, objectively, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions

posing a substantial risk of serious harm." *Id.* at 834, quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). For screening purposes, being housed with an incompatible cellmate is accepted as a sufficiently serious condition to meet the objective prong.

Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Plaintiff alleges that in February 2016, while he was housed in the ASU at SCC, Does 1 and 2 (correctional officers on first watch) lured him into waist-shackles and out of his cell. (Doc. 20, p. 5.) They took Plaintiff to a hallway where inmates shoved him around and threatened him. (*Id.*) When Plaintiff asked why they were doing this to him, Doe 1 told him it was because Plaintiff snitched on an officer who brought drugs into the prison. (*Id.*, pp. 5-6.) Plaintiff was then taken in a van to the main medical building where Does 1 and 2 arranged for the same group of inmates to again threaten and "assault" Plaintiff. (*Id.*, p. 6.) Plaintiff never told Does 1 and 2 that he had pain or felt ill such to justify them removing him from his cell. (*Id.*) These allegations do not state a cognizable claim against Does 1 and 2. Being shoved and threatened by a group of inmates at the behest of correctional officers though no doubt frightening, does not equate to exposure to a substantial risk of serious harm to state a claim under the Eighth Amendment, particularly where no injury occurred. Further, threats do not rise to the level of a constitutional violation. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). Plaintiff's claim is thus not cognizable against John Does 1 and 2.

Plaintiff also alleges that Doe 4 (medical staff/RN) and Dr. Smith prepared false medical accusations that Plaintiff had smoked "spice" (a synthetic marijuana) and had Plaintiff transported to Sonora Regional Hospital. (Doc. 20, p. 6.) Plaintiff never admitted to Doe 4 or to Dr. Smith that he had smoked spice. (*Id.*, p. 6.) Plaintiff alleges the latter is confirmed by the fact that he

8

was never disciplined for smoking spice. (*Id.*) Levying false medical accusations, without more, do not suffice to show deliberate indifference to a serious risk of harm to Plaintiff. Thus, Plaintiff's claim against John Doe 4 and Dr. Smith is not cognizable.

Plaintiff alleges he was transported from Sonora Regional Hospital to SCC on February 19, 2016. (*Id.*, p. 7.) That evening, Wright, Delgado, and Heisol came into his cell and Heisol injected Plaintiff with methamphetamines while he was restrained by Wright and Delgado. (*Id.*) This allegation is facially implausible. *Iqbal*, 556 U.S. at 678. Shortly thereafter, Plaintiff complained of chest pains and was escorted out of his cell in waist-shackles by Osten, Delgado, and Doe 5 (medical staff/nurse) to the ASU medical room. (*Id.*, pp. 7-8.) These allegations do not state a cognizable claim against Wright, Delgado, Heisol, Osten, and Doe 5.

Thereafter, in the medical room, Doe 5 and Valera examined Plaintiff for his complaints of chest pain. (*Id.*, p. 8.) Plaintiff asked them if he could be examined in private, but before Valera could respond, Wright interjected and stated that he thought Plaintiff was faking the chest pain. (*Id.*) Plaintiff then asked Valera to speak to a lieutenant, "which led to 'no' availability." (*Id.*) Nothing in any of these allegations show that Plaintiff was subjected to a substantial risk of serious harm to which these three defendants were deliberately indifferent. Plaintiff has no constitutional right to be examined in private or to speak to a lieutenant, even if there is a policy/procedure for doing so in CDCR. These allegations thus fail to state a cognizable claim against John Doe 5, Valera, and Wright.

Thereafter, Wright and Delgado displayed "a hostile attitude directly at the Plaintiff." (*Id.*) Subsequently, Wright and Delgado "forcefully shoved and pushed Plaintiff out of the medical room. (*Id.*) Plaintiff allegedly never resisted while Delgado squeezed Plaintiff's neck, Wright forced his knee in Plaintiff's back while Bartholomew held Plaintiff's legs.[1] (*Id.*) Plaintiff was then dragged into a holding cell where he was left "for several hours, being delayed on his serous medical issue of chest pains." (*Id.*, p. 9.) Plaintiff alleges that he suffered multiple scrapes on his knees, legs, and face from the use of force by these Defendants. (*Id.*) Plaintiff was thereafter taken back to Sonora Regional Hospital for his chest pains. (*Id.*) Nothing in these

---

[1] These allegations are also assessed under the section for excessive force.

allegations show that Plaintiff was subjected to a substantial risk of serious harm which these Defendants ignored. Again, hostility, such as threats and verbal harassment are not cognizable. *See Oltarzewski*, 830 F.2d at 139 (mere verbal harassment or abuse, including the use of racial epithets, is not sufficient to state a constitutional deprivation under section 1983; *see also Gaut*, 810 F.2d at 925 (threats do not rise to the level of a constitutional violation). Plaintiff's allegations that he was left for several hours in a holding cell which delayed his receipt of medical care for his chest pains is not cognizable. Though Plaintiff allegedly had just been examined by Doe 5 and Valera, his allegations do not show that his chest pains had not been accurately medically assessed, or that any delay in medical treatment rendered thereafter caused him injury. *See Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002); *McGuckin* 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Thus, Plaintiff fails to state a cognizable claim for deliberate indifference to his safety against Defendants Wright, Delgado, and Bartholomew.

**(1) Supervisory Defendants**

Plaintiff alleges that Mason and Martinez "stood by and knew the conduct of force Defendants Wright, Delgado, Osten, and Barthlomew utilized on Plaintiff was not in good faith, but applied toward Plaintiff to cause harm." (Doc. 20, p. 9.) McCarthy allegedly knew of his subordinates' wrongful acts via reviewing multiple incident reports but failed to take and corrective action. (*Id*.) Plaintiff also alleges that, on February 23, 2016, Plaintiff told Bird the events he had suffered and refused to be transferred to BPSP mental health program. (*Id.*) Bird knew of the treatment Plaintiff had endured and "was the overseer and failed to correct or investigate the illegal conduct by his subordinates." (*Id.*) Plaintiff was transferred to the PBSP mental health unit that same day. (*Id.*) Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d

858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

"A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established ... by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted) (alterations in original). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

To state a policy claim, a plaintiff must allege facts that show supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality sued under § 1983 is not subject to vicarious liability for the acts of its agents: it is only liable when the "execution of a government's policy or custom . . . made by . . . those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Duvall v. Coutny of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (citing *Monell* at 694; *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor. . . We have consistently refused to hold municipalities liable under a theory of respondeat superior.")). An

unconstitutional policy cannot be proved by a single incident "unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). In this instance, a single incident establishes a "policy" only when the decision-maker has "final authority" to establish the policy in question. *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988), citing *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986).

Further, "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true and if condoned by [supervisors] could be the basis for some inference of wrongful intent on [the supervisor's] part." *Iqbal*, 556 U.S. at 683. To this end, the Ninth Circuit has held that, where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based on the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). A fundamental premise of this form of liability requires that the actions or inaction by subordinate staff amount to a cognizable claim for violation of a plaintiff's constitutional rights and that the supervisorial defendant had knowledge of such conduct. Since Plaintiff's allegations against the subordinate Defendants are not cognizable, his claims against Mason and Martinez for failing to intervene or against McCarthy and Bird for failing take corrective action based on review of incident reports are likewise not cognizable.

### b. Conditions of Confinement

Plaintiff indicates that he desires to pursue a claim based on his conditions of confinement against Hall, Burke, and John Doe 7. (Doc. 20, p. 14.) The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . ." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th

Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137. Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id.* Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.* Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, *ref. Hoptowit*, 682 F.2d at 1258 (*abrogated on other grounds by Sandin*, 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)). Thus, Plaintiff's factual allegations as to the conditions he was subjected to during his confinement at PBSP must be evaluated to determine whether they demonstrate a deprivation of a basic human need individually or in combination. Plaintiff alleges that at PBSP, Hall, Burke and Doe 7 took turns denying Plaintiff showers and "hardly" gave Plaintiff enough toilet paper

and would delay giving Plaintiff more when he ran out. (Doc. 20, pp. 10-11.) These allegations do not suffice to show that Plaintiff was deprived of a basic human need to state cognizable claim. Further, per his allegations, Plaintiff was only at PBSP from February 23, 2016 to March 3, 2016, when he was transferred back to SCC. Plaintiff's allegations do not state that he went without a shower for his entire time at PBSP, but even so, a mere nine days without a shower is too temporary to constitute a violation of the Eighth Amendment. Likewise, Plaintiff's allegations that Hall, Burke, and Doe 7 hardly gave him enough toilet paper and delayed giving him more when he ran out do not show that he was denied toilet paper or deprivation of a basic human need. Thus, Plaintiff's allegations against Hall, Burke, and Doe 7 for Plaintiff's conditions of confinement at PBSP are not cognizable. However, even if they were, Plaintiff fails to show that his allegations of events that occurred at PBSP are sufficiently related to his allegations of events at SCC to not violate Rules 18 and 20 of the Federal Rules of Procedure.

Plaintiff alleges that Dr. Yu acted in concert with the Defendants from SCC with an objective to isolate Plaintiff and continue his harsh treatment because he told Dr. Yu of all of the events alleged herein, but she ignored them and did not report them. (*Id.*, p. 11.) Similar to Plaintiff's allegations against supervisory defendants discussed above, Plaintiff fails to state any cognizable claims based on acts of other prison personnel for Dr. Yu to be liable for not reporting them.

### c. Deliberate Indifference to Serious Medical Needs

Plaintiff indicates that he desires to pursue a claim for deliberate indifference to his serious medical needs against Wright, Delgado, Hiesol, T. Osten, John Doe 5, Valera, Bartholomew, Mason, Martinez, Dr. Maddox, Dr. Hamlin, and Dr. Yu. (Doc. 20, p. 14.)

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

Cir.1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett,* 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

In addition to the allegations discussed above, Plaintiff alleges he was released back to SCC on February 21, 2016. (*Id.*, p. 9.) The next day, February 22, 2016, Doe 6 called Dr. Maddox to examine Plaintiff, trying to get Dr. Maddox to place Plaintiff in the mental health/suicidal program at PBSP to silence Plaintiff from revealing everything that had happened to him. (*Id.*) Dr. Maddox intentionally, falsely diagnosed Plaintiff and put Plaintiff in the mental health program after Plaintiff told of everything that had happened to him. (*Id.*, p. 10.)

Plaintiff also alleges that, after transfer to PBSP, he was transferred back to SCC on March 3, 2016. (*Id.*, p. 11.) Plaintiff had a debate/argument with Dr. Maddox about Dr. Maddox manipulating Plaintiff into the mental health program. (*Id.*) The next day, Dr. Hamlin evaluated Plaintiff at Dr. Maddox's request. (*Id.*) In an effort to "quiet" Plaintiff, Dr. Maddox and Dr. Hamlin sent Plaintiff to the mental health program at FSP, which Plaintiff alleges was less than 24-hours after five psychiatrists[2] at PBSP had cleared Plaintiff to return to SCC. (*Id.*, pp. 11-12.) This subjected Plaintiff to harsh isolation and "some sort of disciplinary purpose for Plaintiff complaints." (*Id.*, p. 12.) Though being twice wrongly sent to a mental health program is certainly not desirable, it does not amount to a constitutional violation -- particularly where, as here, Plaintiff fails to state any serious medical need he had for which such action by Dr. Maddox and Dr. Hamlin knowingly caused Plaintiff harm. Plaintiff thus does not state a cognizable Eighth Amendment claim for deliberate indifference to his serious medical needs.

### d. Excessive Force

Plaintiff indicates that he desires to pursue an excessive force claim against Osten, Wright,

---
[2] The Court finds this assertion to be facially implausible.

16

Delgado, and Bartholomew. (Doc. 20, p. 13.) The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), *cert. denied*, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D. Iowa 1992) (citation omitted), *aff'd*, 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation and quotation omitted).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson*, 503 U.S. at 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary. *Id.* Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Id.* That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id.* at 9.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *Hudson*, 503 U.S. at 6-7 (8th Amendment excludes from

constitutional recognition *de minimis* uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir.2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). "Injury and force. . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted).

Plaintiff alleges that, on February 19, 2016, after he was examined for chest pains, Wright and Delgado "forcefully shoved and pushed Plaintiff out of the medical room. (Doc. 20, p. 8.) After being examined, Delgado allegedly squeezed Plaintiff's neck, Wright forced his knee in Plaintiff's back while Bartholomew held Plaintiff's legs which allegedly resulted in scrapes to Plaintiff's knees, legs, and face. (*Id.*) Plaintiff was then dragged into a holding cell. (*Id.*, p. 9.) At most, these allegations amount to nothing more than a *de minimis* use of force which is not cognizable since "not repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. Plaintiff's allegations that Mason and Martinez "stood by and knew the conduct of force Defendants Wright, Delgado, Osten, and Barthlomew utilized on Plaintiff was not in good faith but applied toward Plaintiff to cause harm" (*id.*) are not cognizable since "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not suffice. *Iqbal*, 556 U.S. at 678. Finally, Plaintiff's claim against Osten is not cognizable since he fails to state *any* factual allegations supporting that he took any acts that violated Plaintiff's constitutional rights.

## **CONCLUSION & RECOMMENDATION**

Plaintiff's Second Amended Complaint fails to state any cognizable claims. Given that

Plaintiff has been twice provided the pleading requirements and legal standards for his claims, it appears the deficiencies in Plaintiff's pleading are not capable of cure through amendment. Leave to amend is thus futile and unnecessary. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, the Court **RECOMMENDS** that this action be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 5, 2019**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE